UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CELESTE JURBAN,

       Plaintiff,                      Case No. 5:19-cv-11066
                                               District Judge Judith E. Levy
v.                                       Magistrate Judge Anthony P. Patti

NANCY A. BERRYHILL,

       Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 14), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 17) and AFFIRM THE COMMISSIONER'S DECISION**

**I.    RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 14), **GRANT** Defendant's motion for summary judgment

(ECF No. 17), and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

       Plaintiff Celeste Jurban brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for Supplemental Security Income

("SSI") benefits. This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment (ECF

No. 14), the Commissioner's cross-motion for summary judgment (ECF No. 17), and the administrative record (ECF No. 8).

### A. Background and Administrative History

Plaintiff alleges her disability began on December 1, 2015, at the age of 19. (R. at 135.) She filed an application for SSI benefits on August 8, 2016. (R. at 66.) In her disability report, she lists osteogenesis imperfect – Type II, chronic back and joint pain, inability to bend/limited mobility, trouble getting out of bed or off the couch, multiple surgeries on fractures/breaks, hearing loss and hearing aids in both ears, severe migraines, and trouble sleeping as limiting her ability to work. (R. at 158.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (R. at 90-92.) On November 3, 2017, ALJ Lauren G. Burstein held a hearing, at which Plaintiff and a vocational expert (VE), Diane Regan, testified. (R. at 26-59.) On April 24, 2018, ALJ Burstein issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 7-20.)

Plaintiff submitted a request for review of the hearing decision/order. (R. at 133-134.) However, on February 20, 2019, the Appeals Council denied Plaintiff's request for review. (R. at 1-6.) Thus, ALJ Burstein's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on April 12, 2019.

### B. Plaintiff's Medical History

The administrative record contains approximately 112 pages of medical records, which were available to the ALJ at the time of her April 24, 2018 decision. (R. at 20, 175-287 [Exhibits 1F-4F].) These materials will be discussed in detail, as necessary, below.

### C. The Administrative Decision

Pursuant to 20 C.F.R. § 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 8, 2016, the application date. (R. at 11.) At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: osteogenesis imperfecta and vitamin D deficiency. (R. at 11-13.) At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (R. at 13-14.) **Between Steps 3 and 4** of the sequential process the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> . . . to perform light work . . . except: the claimant could never climb ladders, ropes, or scaffolds and occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl. The claimant would require a sit or stand option with sitting up to 30 minutes, standing for 2 hours, and walking for 30 minutes, at a time.

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

(R. at 14-15.) At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work. (R. at 15.) At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform, such as packer, sorter, and assembler. (R. at 16-17.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since August 8, 2016. (R. at 17.)

### D. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

4

1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**E. Analysis**

Plaintiff alleges that: (1) the ALJ's decision is not supported by substantial evidence because the ALJ failed to include all of her limitations in her RFC assessment;[2] (2) the record does not support the ALJ's finding that she can perform light work on a sustained basis; and (3) the ALJ violated Social Security Ruling (S.S.R.) 85-15 by not adequately considering the effects of her limitations. (ECF No. 14, PageID.332-334.) The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the ALJ's RFC determination "based on the medical evidence showing that Plaintiff chose not to take her medication for osteogenesis imperfecta, she generally had routine examinations showing normal gait and full range of motion in her back, her two fractures in 2017 did not require any significant treatment or surgical intervention, and she continued to engage in daily activities." (ECF No. 17, PageID.350-359.) I will address each argument in turn.

1.  **RFC Determination**

The Plaintiff bears the burden of proof at Steps 1-4, including proving her RFC. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)

---

[2] Plaintiff frames her summary judgment motion as a challenge to the ALJ's Step Five determination (ECF No. 14, PageID.329), but she is actually challenging the RFC determination. *See Kirchner v. Colvin*, No. 12-CV-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed.").

("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (internal citations omitted); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity."). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform[.]" *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

Plaintiff's RFC is "the most [she] can still do despite the physical and mental limitations resulting from [her] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a). The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Pursuant to Social Security Rule (S.S.R.) 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p at *7. "The ALJ need not decide or discuss uncontested issues, 'the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002) (citation omitted).

### 2. The Court should conclude that the ALJ's RFC determination is supported by substantial evidence

Plaintiff asserts that the ALJ's decision is not supported by substantial evidence because the ALJ failed to include all of her limitations in the RFC determination, and the record does not reflect the finding that she can perform light work on a sustained basis. (ECF No. 14, PageID.332-334.) In so doing, she cites to her medical records which show that she: has been diagnosed with osteogenesis imperfect and a vitamin D deficiency; suffers from joint and back pain and has had multiple bone breaks as a result of those diagnoses; has been prescribed medication for her osteogenesis imperfect; suffered back and spine injuries from a January 2017 rollover car accident; and broke her ankle in June 2017. (ECF No. 14, PageID.332-333 (citing R. at 179, 181, 184, 192, 195, 242, 261 [Exhibits 1F-4F]).) An examination of the record, however, reveals that the ALJ did consider each of these facts in formulating her RFC determination, ultimately finding limited

support for Plaintiff's claims regarding the severity of her symptoms and resulting limitations (R. at 14-15), and that substantial evidence supports that finding.

    As the ALJ reasoned (R. at 15), in spite of Plaintiff's osteogenesis imperfecta diagnosis and vitamin D deficiency (R. at 179, 181, 190, 242 [Exhibits 1F, 3F]), physical examinations from 2016 and 2017, prior to Plaintiff's November 2017 hearing, established that she had a normal gait, and good spinal and overall range of motion (R. at 179, 181, 189, 194, 263, 284-285 [Exhibits 1F-2F, 4F]), and Plaintiff's condition was characterized as "mild" at a September 2017 physical examination at Greater Yale Medical (R. at 208 [Exhibit 3F]).  Further, consistent with the ALJ's findings (R. at 15 (citing R. at 220 [Exhibit 3F])), in a January 2017 follow-up for the spinal fracture Plaintiff suffered in the car accident, she reported that she had not adhered to her prescription medication for osteogenesis imperfecta, Fosamax, and was re-prescribed the medication (R. at 218-220 [Exhibit 3F]).  Plaintiff testified at the hearing that her physician had advised her to stop taking the prescription *after she broke her ankle in June 2017* because it would prevent further healing (R. at 45), but, as described above, she was non-compliant with the medication in January 2017 (R. at 218-220 [Exhibit 3F]), well before she suffered her broken ankle (R. at 208 [Exhibit 3F]).  In addition, medical records show that the prescription was renewed in September 2017, just ahead of the November 2017 hearing.  (R. at 210 [Exhibit 3F].)

9

Credibility decisions are the province of the ALJ, not this Court. *See Sias v. Sec'y of Health and Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) (failure to follow a prescribed treatment may be considered by the ALJ when evaluating credibility); *see also* S.S.R. 16-3p ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."). As the ALJ succinctly summarized:

> The objective medical evidence fails to provide strong support for the claimant's allegations of disabling symptoms and limitations. The claimant was diagnosed with osteogenesis imperfecta after presenting with a history of multiple bone fractures and complaints of low back pain. In addition, the claimant was also diagnosed with a vitamin D deficiency. The claimant was prescribed bone density drugs. Despite her musculoskeletal complaints, on exam throughout treatment, the claimant presented with a normal gait, full lumbar range of motion, normal motor strength, and full extremity range of motion (Ex. 3F/26, 4F/5). During a July 2016 treatment, the claimant denied any joint pain (Ex. 3F/39). In August 2016, the claimant reported her back pain had resolved (Ex. 3F/24). While the claimant suffered a lumbar fracture in January 2017 and a right ankle fracture in September 2017[3], there is no evidence in the record indicating these conditions caused any significant symptoms or limitations. The claimant did not require substantial follow-up treatment or surgery for her 2017 fractures. In a January 2017 follow-up treatment for her lumbar fracture, the claimant reported she was not treating with her prescribed osteogenesis imperfecta medication (Ex. 3F/19). During a September 2017 follow-

---

[3] The ankle fracture occurred in June 2017, but the ALJ's mistake on the date does not change the substance of her analysis. (R. at 208 [Exhibit 3F].)

>  up treatment for her ankle fracture, the claimant's physician noted the claimant had a history of only mild osteogenesis imperfecta. The claimant again reported she was not treating with her medication (Ex. 3F/7).

(R. at 15.) Plaintiff neither demonstrates how this recitation of the medical record is inaccurate nor why the law compels a different conclusion than that reached by the ALJ.

The ALJ also acknowledged Plaintiff's history of broken bones, including the back fracture she suffered in the car accident and her June 2017 ankle break, as well as complaints of back pain (R. at 14-15), but found her claims regarding the intensity and limiting effect of these impairments "not entirely consistent" with the other evidence in both the objective medical and the subjective testimonial record (R. at 14-15). Indeed, consistent with the ALJ's findings (R. at 14-15), Plaintiff testified that before she suffered a broken ankle, she fed her dogs, attended class as part of her GED program, went grocery shopping with her grandmother twice a month, and cleaned the kitchen. (R. at 34, 46-47.) This testimony supports the ALJ's RFC determination, which accounts for Plaintiff's limitations by finding that she can perform light work with some limitations and a sit-stand option. And, while such daily activities and household chores may not, *in and of themselves*, necessarily lead to the conclusion that she is capable of sustained work, the ALJ's cited *combination* of objective medical evidence, diminished credibility as to subjective complaints and information regarding the Plaintiff's activities provides

11

substantial evidence in support of her decision. As noted above, this Court defers to that finding "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*, 581 F.3d at 406 (internal citation omitted).

Further, Plaintiff's argument that her "fragile bone disease evidenced by multiple fractures indicates that she cannot perform the standing/walking requirements of light work on a sustained basis" (ECF No. 14, PageID.333) is cursory and lacks merit. She points to no evidence in the record identifying long-term functional limitations as a result of these factures that would justify restrictions beyond those included by the ALJ in her RFC determination. *See Jordan*, 548 F.3d at 423 (the claimant bears the burden of proving a lack of RFC). Nor is it the Court's obligation to scour the record to assist Plaintiff in supporting his arguments. *Henderson v. Comm'r of Soc. Sec.*, No. 14-12675, 2015 WL 2063096, at *2 (E.D. Mich. May 4, 2015) ("[A] plaintiff cannot simply claim that the ALJ erred while leaving it up to the Court to scour the record to support this claim.") (quotation marks and citation omitted). And, as the ALJ reasoned (R. at 15), according to the records provided, neither her back fracture from the car accident, nor her ankle fracture, required significant treatment or surgery. For the

12

back fracture,[4] she was prescribed pain medication and a brace (R. at 193 [Exhibit 2F], 218-220 [Exhibit 3F], 261-264 [Exhibit 4F]), and though her ankle fracture was slow to heal (R. at 36, 42, 208 [Exhibit 3F]), it had healed enough that her cast had been removed by the time of the hearing (R. at 34-36). *See* S.S.R. 16-3p.

Plaintiff asserts that the ALJ improperly considered her activities of daily living because the ALJ did not discuss her testimony that she did not do household chores, only fed her dogs and picked up her dishes prior to breaking her ankle, and limited grocery shopping to twice a month. (ECF No. 14, PageID.334.) But there is no indication from Plaintiff's testimony that she and her grandmother limited their grocery shopping to twice a month, or that she did not do chores or yardwork, as a result of any physical impairments. For example, when asked who does the yardwork at her house, Plaintiff said: "My grandma. We don't really have much yardwork. It's just mowing the grass." (R. at 47.) Moreover, it is not within the province of this Court to reweigh the evidence. The Court cannot "reconsider facts, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Nor must an ALJ discuss in his or her RFC determination every piece of evidence presented. Instead, as was done here, an

---

[4] According to the notes from Plaintiff's January 22, 2017 visit to Beaumont Hospital for a second opinion regarding her injuries from the car accident, Plaintiff was "unrestrained" during the accident. (R. at 192-193 [Exhibit 2F].)

13

ALJ must "'articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Delgado*, 30 F. App'x at 548. The ALJ did so here.

Accordingly, the Court should conclude that substantial evidence supports the ALJ's RFC determination, and deny Plaintiff's motion for summary judgment on that basis.

### 3. The Court should also conclude that the ALJ did not fail to follow S.S.R. 85-15

Plaintiff's final argument is that even if substantial evidence supports the ALJ's disability determination, the decision should be reversed because the ALJ violated S.S.R. 85-15 by not considering the effects of her limitations. (ECF No. 14, PageID.334.) S.S.R. 85-15 governs the framework for an ALJ's evaluation of non-exertional impairments, including stopping, bending, and crouching, all of which the ALJ here included as part of her RFC determination. (R. at 14.) Simply disagreeing with the ALJ's evaluation does not establish that the ALJ committed a procedural violation. And again, Plaintiff points to no evidence in the record identifying long-term functional limitations as a result of Plaintiff's impairments that would justify restrictions beyond those included by the ALJ in her RFC determination. *See Jordan*, 548 F.3d at 423 (the claimant bears the burden of proving a lack of RFC). Nor does Plaintiff convincingly demonstrate why the

14

scope and restrictions accounted for in the RFC are inadequate to provide for her limitations. Accordingly, the Court should deny Plaintiff's motion for summary judgment on this basis.

### F.  Conclusion

Plaintiff has the burden of proof on statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."). Plaintiff has not shown legal error that would upend the ALJ's decision. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 14), **GRANT** Defendant's motion for summary judgment (ECF No. 17), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 5, 2020

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE